IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOCAL 702 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 07-cv-0369-MJR<br>) |
| ILLINOIS CONSOLIDATED TELEPHONE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I. Background

On May 21, 2007, Plaintiff, Local 702 International Brotherhood of Electrical Workers ("Local 702" or "the Union"), filed a three-count complaint against Defendant, Illinois Consolidated Telephone Company ("ICTC"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185. The action now proceeds on the Union's amended complaint, filed July 31, 2007. The Union seeks to vacate an arbitration award issued on March 1, 2007, or, in the alternative, either to enforce the award or to compel arbitration.

ICTC is a wholly-owned subsidiary of Consolidated Communications Holdings, Inc. ("Consolidated"). The Union and ICTC are parties to a Collective Bargaining Agreement ("CBA" or "Agreement"). The parties' current CBA, effective November 15, 2005 through November 15, 2008, governs the terms and conditions of employment for ICTC employees, including those who

work at ICTC's Network Operations Center ("NOC") in Mattoon, Illinois. Doc. 20, Exhibit 1. In April, 2004, Consolidated completed its purchase of Texas-based TXU Communications ("TXU"). TXU maintains a NOC in Lufkin, Texas. In 2006, Consolidated adopted a plan to integrate the functions of the Illinois NOC and the Texas NOC, including transfer of bargaining unit work from the Illinois NOC to the Texas NOC.

The Union filed a series of grievances protesting this transfer of bargaining unit work. The grievances were consolidated into one class action grievance which was arbitrated by an impartial arbitrator from a Federal Mediation and Conciliation Service panel, chosen according to the terms of the CBA. On March 1, 2007, the arbitrator issued his Opinion and Award.

The Union asserts that the award should be vacated because it fails to resolve the sole issue presented and is ambiguous, factually inaccurate and incomprehensible. Consolidated proposed seeking clarification by resubmitting to the arbitrator the issue the parties originally asked him to decide. The Union rejected this offer as futile, and as risking further confusion and an arbitrary interpretation of the facts. Consolidated rejected the Union's proposal to submit the issue to another arbitrator.

The Union seeks a Court Order vacating the arbitrator's award and directing Consolidated to participate with the Union in requesting a new arbitrator. In the alternative, the Union seeks the enforcement of its interpretation of the award - that the arbitrator ruled in its favor on the issue of whether Consolidated could transfer Illinois NOC work to the Texas NOC. As a third alternative, the Union seeks a Court Order directing Consolidated to proceed to arbitration on the Union's two-part grievance filed March 27, 2007. This grievance alleged that Consolidated was violating the arbitrator's award and/or the CBA by continuing to transfer Illinois NOC work to the

Texas NOC.

ICTC moves the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or to transfer it to the United States District Court for the Central District of Illinois, Urbana Division, pursuant to 28 U.S.C. § 1404(a) or § 1406(a).

## II.  Legal Standard for Transfer of Venue

**28 U.S.C. § 1406(a)** provides, "The district court . . . in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. **28 U.S.C. § 1404(a)** provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

To prevail on a motion for transfer pursuant to § 1406(a) or § 1404(a), the party seeking transfer must establish that the transferee forum is clearly more convenient. *Wild v. Subscription Plus, Inc.,* **292 F.3d 526, 530 (7th Cir. 2002) (stating that § 1406(a ) and § 1404(a) are "closely parallel" and both permit transfer for convenience of parties)**.  When evaluating the convenience of the parties and witnesses, the Court considers the following factors:  (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties. *First Nat'l Bank v. El Camino Resources, Ltd.,* **447 F.Supp.2d 902, 911-12 (N.D.Ill. 2006) (citing** *Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n,* **2001 WL 503039, at \*1 (N.D.Ill. 2001)**.  The Court also considers factors related to the interests of justice, including "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Id.*  Public interest factors "may be determinative in a particular case,

3

even if the parties and witnesses might call for a different result." *Id.* "The party seeking to transfer venue also 'has the burden of establishing, by reference to particular circumstances, that the [proposed] transfer forum is clearly more convenient' than the transferring court." ***Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.,* 2007 WL 3120011, \*2 (N.D.Ill. 2007) (quoting *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir. 1986)).**

### III.  Analysis

#### A.  The Union's Choice of Forum

The Union chose to bring its suit in the Southern District of Illinois, and generally, the plaintiff's choice of forum carries substantial weight, particularly where it is plaintiff's home forum. ***See Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir.1997)**. The significance of plaintiff's choice, however, is materially diminished when "no significant connection to the chosen forum exists." ***Heston v. Equifax Credit Info. Serv*., 2003 WL 22243986, at \*1 (N.D.Ill. 2003) (citation omitted)**.

ICTC argues that the Union's amended complaint offers little basis for filing this action in the Southern District of Illinois.  ICTC maintains its headquarters in Mattoon, Illinois. Deters Affidavit, Doc. 23, Exhibit A, ¶¶ 1, 3 ("Deters Aff.").  Mattoon is in the Central District of Illinois.  Fewer than twelve per cent of ICTC's customers reside in Effingham County.  *Id*. at ¶ 8. Effingham County is the only county ICTC serves that is within the boundaries of the Southern District of Illinois.  The NOC facility at issue is located in Mattoon.  Negotiations for the CBA, which form the basis for the Union's grievances and the award at issue, took place in Mattoon.  *Id*. at ¶ 9.

The Union argues that its offices are located in West Frankfort, Illinois, which is in

the Southern District of Illinois. The current CBA was executed at the West Frankfort office after ICTC had signed the Agreement. Phillips Affidavit, Doc. 24, Exhibit 1, ¶ 7 ("Phillips Aff."). ICTC has negotiated and communicated with the Union at its West Frankfort office by telephone, facsimile and mail. Exhibit 1, ¶ 5. Approximately two-thirds of the Union members who are Illinois residents live in "the area served by the United States District Court for the Southern District of Illinois." Exhibit 1, ¶ 9.

On balance, this factor weighs in favor of retaining this action in the Southern District. First, the Union's choice of forum is entitled to substantial weight because it is the Union's home forum. Second, where ICTC's customers reside is not relevant to this action, which centers on ICTC's employees, who are members of Local 702 and who work at the Illinois NOC. Two-thirds of the Union's members who are Illinois residents reside in this District. The Union does not specify how many employees who reside in the Southern District work at the Illinois NOC; however, ICTC does not dispute the Union's statistic. Moreover, the Court observes that the City of Effingham is less than thirty miles by interstate highway from Mattoon and that crossing the county line into the Southern District is an even shorter distance. These factors lead the Court to the conclusion that some significant number of the Illinois NOC employees resides in the Southern District. Consequently, the Court concludes that ICTC employees who will be affected by the transfer of bargaining unit work from the Illinois NOC to the Texas NOC reside in the Southern District. These considerations weigh strongly in favor of the Southern District.

### B. Situs of Material Events

In support of ICTC's argument for transfer of venue, it identifies three "events" connecting this litigation and the Central District: (1) the arbitration concerned events that took

5

place solely in Mattoon, Illinois and Lufkin, Texas; (2) the arbitration hearing was held over a two-day period in Mattoon; and (3) the CBA was negotiated in Mattoon. Deters Aff. ¶ 9.

The Union argues that the material event in this case is the arbitration award which was issued from the office of a Chicago arbitrator after a hearing that took place in Mattoon. According to the Union, the situs of the material event is a document rather than a geographical location.

The Court cannot agree that the situs factor can be construed as a document rather than a location. Both parties assert that the material event is the arbitration award. On this basis, the situs of material events is in Mattoon, where the arbitration hearing was held. While this factor may be of less than compelling significance, nonetheless, it favors transfer.

### C. Ease of Access to Sources of Proof

The sources of proof in this matter will consist of documents relating to the arbitration hearing and the award. Neither party argues that the relevant documents and records are not available electronically or may not be readily transferred. Therefore, this factor is of marginal significance in the Court's analysis.

### D. Convenience of Witnesses

ICTC contends that, to the extent that witnesses are necessary for these proceedings, the Central District would be more convenient for witnesses for both ICTC and the Union. The witnesses who testified at the arbitration hearing, including the Union's Business Representative, reside either within the bounds of the Central District or in Texas.

The Union responds that testimony is neither relevant nor necessary for the Court to decide this case. The Scheduling and Discovery Order entered herein anticipates no discovery or

depositions but reflects that this matter will be resolved by the Court based on briefs.

ICTC has not specified any key witnesses nor has it described what relevant testimony might be obtained from witnesses.  ***Moore v. AT & T Latin America Corp.*, 177 F.Supp.2d 785, 790 (N.D.Ill. 2001) (citation omitted) ("When identifying potential witnesses, a party must specify key witnesses and describe their testimony in a manner that goes beyond vague generalizations.")**.  ICTC's allegation that witnesses from the Central District may testify is too vague to bear the burden of demonstrating to the Court that it should transfer venue of this case.  For these reasons the Court finds that this factor is of marginal significance in the Court's analysis.

### E.  Convenience of the Parties

In analyzing the convenience of the parties, the Court considers "their respective residence and abilities to bear the expense of trial in a particular forum." ***First Horizon Pharmaceutical Corp. v. Breckenridge Pharmaceutical, Inc.*, 2004 WL 1921059, \*4 (N.D.Ill. 2004) (quoting *Von Holdt v. Husky Injunction Molding Systems Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill. 1995)**.

Neither party makes any substantial argument as to why trial in the Central District or the Southern District would be more or less convenient for the parties.  The inconvenience to any party in traveling between the Central District and the Southern District is minimal.  Furthermore, "[t]he burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another."  ***Graham v. U.P.S.,* 2007 WL 2903089, \*5 (N.D.Ill. 2007)**.  ICTC has failed to demonstrate that the effect of transfer would do more than shift any inconvenience from ICTC to

the Union. For these reasons, the convenience of the parties factor slightly favors the Southern District.

### F. The interests of justice

This factor focuses on the "efficient administration of the court system," rather than the private considerations of the litigants. ***Central States, Southeast and Southwest Areas Pension Fund v. Salasnek Fisheries, Inc*., 977 F.Supp. 888, 892 (N.D.Ill. 1997) (citing *Coffey*, 796 F.2d at 221)**. Factors to consider under this prong include (1) the speediness of each district in concluding their proceedings, (2) the districts' familiarity with the applicable law, and (3) the relation of the community to the occurrence and the desirability of resolving the controversy in its locale. ***Amoco Oil Corp. v. Mobil Oil Corp., 90 F. Supp. 2d 958, 963 (N.D. Ill 2000)***.

The first two factors favor neither the transferor nor the transferee district. The Court's review of the "U.S. District Court - Judicial Caseload Profile" indicates that the Districts are fairly evenly matched on civil filings. Doc. 23, Exhibit C. On the important statistic, "weighted filings," both the Southern and Central Districts have a numerical standing of 73. Cases are moving somewhat more swiftly through the Central District, since the Southern District has 77 civil cases more than three years old while the Central District has only 29. However, the undersigned judge, as of the most recent reporting period, had only 8 cases more than three years old on his docket. The criminal filings statistics somewhat favor the Southern District. In 2006, the Central District had fifty-nine more criminal felony filings than did the Southern District, which would result in a more congested docket in the Central District. On balance, the Court concludes that the first factor is neutral. The Court also concludes that the second factor is neutral because the Courts are equally familiar with applicable law.

The Court finds that the third factor, "the relation of the community to the occurrence and the desirability of resolving the controversy in its locale," favors the Southern District. ICTC contends that the community in the Central District has a far greater interest in the resolution of this matter because ICTC is a major employer in that District. The Union responds that the majority of its Illinois members reside within the Southern District. These Union members have a particular interest in the resolution of this matter which may have an impact on their jobs and those of their brother and sister members.

The Court finds the Union's argument compelling. That ICTC is a major employer in the Central District could be relevant, but ICTC did not specify the residence of the employees who work at the Illinois NOC. That ICTC's customers reside chiefly in the Central District is irrelevant to the issues before this Court. Approximately two-thirds of the Union's members who are Illinois residents live in the Southern District of Illinois. As set forth above, on the facts before the Court, it appears that some substantial number ICTC employees who will be affected by the transfer of bargaining unit work from the Illinois NOC to the Texas NOC live within the Southern District. This District has a strong interest in this action, which weighs significantly against transfer.

## IV.  Conclusion

After careful consideration, the Court finds that ICTC has not established sufficient facts to warrant disturbing the Union's choice of forum. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss or Transfer Venue (Doc. 23).

**IT IS SO ORDERED.**

**DATED this 30th day of November, 2007**

        **s/Michael J. Reagan**
        **MICHAEL J. REAGAN**
        **United States District Judge**