# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOCAL 702 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 07-CV-0369-MJR ) |
| ILLINOIS CONSOLIDATED TELEPHONE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

On October 17, 2008, the Court found by clear and convincing evidence that Illinois Consolidated Telephone Company ("ICTC") was in contempt of the Court's October 17, 2008, Order granting the International Brotherhood of Electrical Workers, Local Union No. 702's ("the Union"), motion for summary judgment. The Court ordered the Union to submit a proposal indicating what sanctions it believed were appropriate as well as an itemization of fees and expenses incurred in bringing the violation to the Court's attention. The matter has been fully briefed and is ready for disposition. The sanctions sought by the Union are fourfold, and the Court will address each in turn.

*Attorney's fees and costs*

As the Court observed in its October 17 Order, "[r]easonable attorney fees related to a civil contempt proceeding may [] be awarded." ***BPS Guard Serv., Inc. v. International Union of United Plant Guard Workers of Am. Local 228,* 45 F.3d 205, 211 (7th Cir. 1995)**. The Union originally sought fees and costs in the amount of $7,496.50. *See* Doc. 63, Attachment 1, Teitelbaum

Affidavit. ICTC responded that it had reviewed Teitelbaum's affidavit and the attached time records and that it did not object to the Union's request for the itemized fees and costs. The Union now submits Teitelbaum's Supplemental Affidavit in which she itemizes a request for additional compensation in the amount of $7,977.92 for time spent on the Union's behalf in settlement efforts and in researching and drafting the Union's Reply (Doc. 67, Attachment 1). The aggregate amount of the requests for compensation is $15,474.42.

"District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the attorneys' fees requested." **Heriaud v. Ryder Transp. Services, 2006 WL 681041, 2 (N.D.Ill. 2006) (quoting *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999))**. "The most useful starting point for determining the amount of a reasonable fee is the number of hours expended on the litigation multiplied by a reasonable hourly rate." *Id*. **(quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983))**. The party seeking the award of fees and costs "bears the burden of proving the reasonableness of the hours and the hourly rates claimed." *Id*. **(citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir.1999))**.

The Court has carefully reviewed the affidavits and time records submitted by the Union in support of its request for attorneys' fees and costs. Based on the material submitted, as well as a review of the relevant briefs, the Court finds that the hourly rates charged and the hours expended are reasonable in light of the tasks performed. The fees are also reasonable and customary for similar services in this area and were necessary for the Union's representation. The costs sought by the Union are minimal. The Court awards attorneys' fees and costs of $15,474.42 to the Union, to be paid by ICTC within one month of the date of this Order.

*Make-whole damages for the loss of one full-time position*

The Union requests that the Court require ICTC to comply with Arbitrator Kozlowski's Award, which required ICTC to make the bargaining unit employees whole for the loss of one full-time bargaining unit position. *See* Doc. 2, Exhibit 2, Opinion and Award. The Union computes ICTC's make-whole obligation for the full-time position at $128,415.85 in lost wages for the time period beginning January 1, 2006 (the date worked was moved from the Illinois Network Operations Center ("NOC") to the Texas NOC) and ending July 15, 2008 (the day after the Court entered its Order granting summary judgment in favor of the Union). The Union also seeks interest beginning July 15, 2008, and continuing until paid.

ICTC contends that the Union's calculations are based on a faulty premise - that a job would not have been lost to reductions in force, decreases in overtime hours or elimination of the position for other reasons that could mitigate the amount of the award. In support of its argument, ICTC submits the affidavit of Mitch Foreman, ICTC's NOC Director, who avers that the number of employees required at the Illinois NOC would have decreased from 11 employees (in December 2005) to 9 employees (as of May 8, 2006) because of the reduced number of customer phone line connections (gradually decreasing from 86,435 in January 2005 to 70,394 in September 2008) and because of improvements in technology, including an automated testing system. In sum, ICTC contends that, because the number of bargaining unit employees would have been reduced to 9, the appropriate back pay remedy is $16,963.20[1], or the amount a bargaining unit employee would have been compensated for the period from January 1, 2006 to May 8, 2006.

The Union replies that back pay should not be reduced based on ICTC's speculating as to what might have occurred if ICTC had not improperly transferred work. The Union submits

---

[1]ICTC computes this amount at $23.56 per hour for 90 work days, or 720 hours, which amounts to $16,963.20.

excerpts from the arbitration record which show that returning the network-facing work to Illinois will necessitate adding three employees; therefore, even if customer lines have decreased sufficiently to eliminate one NOC position, the bargaining unit would still increase by two.

Arbitrator Kozlowski required ICTC to make the bargaining unit employees whole for the loss of one full-time position, beginning January 1, 2006. In its Order of July 14, 2008, the Court confirmed Kozlowski's Award in favor of the Union. The Award states, "As no monetary award can be substantiated, the parties must assume the responsibility of calculation as to a reasonable amount as referred to the January 1, 2006 date of work being performed and moved from Illinois NOC to Texas NOC." Award, p. 6. Because Kozlowski left the monetary sanction open before him, the Court remands this issue to Kozlowski under whose aegis the parties will assume the responsibility of calculating the amount that will make the Union whole for the loss of one bargaining unit position.

### *Make-whole damages*

The Union requests that the Court sanction ICTC by ordering it to make the bargaining unit whole at the appropriate wage rate for all hours the unit would have spent performing the Illinois NOC work that was transferred to Texas had ICTC returned that work to the bargaining unit on July 15th as ordered by the Court on July 14th. The Union requests that the Court order ICTC to calculate the wages due under this portion of the order and submit those calculations with supporting documentation to the Court within 5 days of its order.[2]

---

[2]The Union offers the following information to calculate lost wages: "(1) the exact percentage of Illinois NOC work returned to Illinois during Hurricane Ike (Foreman's affidavit states it was "less than 50%"); (2) the number of days the Illinois NOC performed this work; (3) the amount of overtime the bargaining unit worked during that period; and (4) the amount of overtime the bargaining unit worked during an equivalent number of days just prior to the temporary return of the work. From this information, the parties could then calculate the daily

4

ICTC responds that this request should be denied because it would not reasonably compensate the bargaining unit but would amount to a huge windfall. ICTC contends that the unit has already been made whole. According to ICTC, the Union's request is based on the erroneous assumption that after July 14, 2008, the Illinois bargaining unit would have performed not only the NOC work previously transferred to Texas but also the work contemporaneously transferred from Texas to Illinois at the time of the initial transfer in January 2006. If the affected work was returned to Illinois on July 15, there would have been a simultaneous return to Texas of work then being performed by the Illinois bargaining unit. According to ICTC, the Illinois bargaining unit clearly had work to do after July 14th and to adopt the Union's theory would be to compensate these employees two-and-one-half times for the work they performed since July 14th.

The Union replies that, rather than amounting to a windfall, an award of the requested damages would merely constitute a make-whole remedy. The Union submits that, if ICTC had obeyed the Court's Order, someone in the bargaining unit, on straight-time or overtime, would have performed the affected work since July 15th, as they did on a moment's notice when Hurricane Ike struck in September, 2008. The Union asserts that ICTC should not be allowed to take advantage of its contemptuous action and erode this make-whole remedy by speculating what it might have done had it complied with the Court's Order and returned work to the Illinois NOC.

The Court finds that it must take additional evidence in order to resolve the issue of make-whole damages. Accordingly, the Court sets the issue for hearing on **March 13, 2008, at 2:30**

---

increase in overtime hours resulting from the return of a specific percentage of the Illinois NOC work. From that one could extrapolate to the number of hours the bargaining unit would have worked if ICTC had returned all of the work to the bargaining unit. Then one would simply have to multiply that number of hours by the overtime rate. The monies should be distributed among the bargaining unit employees who would have performed the work in question." Doc. 63, n. 4.

5

**p.m.** The parties may present testimony if they desire.

### *$1,000 a day sanctions*

The Union requests $1,000 a day in sanctions for each day that ICTC fails to meet any of the deadlines in the Court's October 17 Order. ICTC does not object to the daily sanction amount but asks the Court to set a date certain of December 15 for ICTC to complete transfer of the work to the Illinois bargaining unit, with the daily sanction to commence after that date if the transfer is not completed. The Union replies that ICTC's response is a stalling technique to delay its compliance with the Court's Order.

The Court finds that sanctions should be imposed from December 15, 2008. ICTC does not complain about the amount of the daily sanctions. The Court believes that allowing time for ICTC to transfer the work to the Illinois NOC is reasonable and that the amount of the sanction is likely to deter ICTC from further contemptuous behavior. Therefore, the Court imposes sanctions of $1,000 a day for each day that ICTC fails to meet any of the deadlines set forth in the Court's October 17 Order.

### **Conclusion**

To summarize, the Court **GRANTS in part, RESERVES in part and DENIES in part** the sanctions sought by the Union (Doc. 63), as follows: (1) the Court **GRANTS** attorneys' fees and costs in the amount of $15,474.42, to be paid by ICTC to the Union's counsel, Marilyn S. Teitelbaum, Schuchat, Cook & Werner, within one month of the date of this Order; (2) the Court **RESERVES** on the issue of make-whole damages and sets it for hearing on **March 13, 2008, at 2:30 p.m.**; and (3) the Court **DENIES** the Union's motion insofar as it seeks to impose $1,000 a day sanctions as of October 17, 2008, and instead imposes those sanctions as of December 15, 2008.

6

Lastly, the Court **REMANDS** the issue of make-whole damages for the loss of one full-time position to Arbitrator Bruno Kozlowski to decide.

    **IT IS SO ORDERED.**

    **DATED this 14th day of January, 2009**

    **s/Michael J. Reagan**
    **MICHAEL J. REAGAN**
    **United States District Judge**